1    **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9    Mark Jordan,                          No. CV-18-0056-TUC-BGM

10                     Petitioner,          **ORDER**

11   v.

12   C. Howard, Warden,[1]

13

14                     Respondent.

15          Currently pending before the Court is Petitioner Mark Jordan's *pro se* Petition

16   Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in Federal Custody

17   ("Petition") (Doc. 1).  Respondent has filed a Return and Answer ("Answer") (Doc. 12).

18   Petitioner filed a Traverse and Reply ("Reply") (Doc. 15).  The Petition is ripe for

19   adjudication.

20

21   **I.      PROCEDURAL BACKGROUND**

22          Petitioner is currently incarcerated at the United States Penitentiary in Tucson,

23   Arizona ("USP–Tucson").   *See* Fed. Bureau of Prisons ("BOP") Inmate Locater,

24   https://www.bop.gov/inmateloc/ (last visited March 29, 2021).   Petitioner is serving

25   sentences for Murder in the Second Degree, and Assault.  *See* Response (Doc. 12)

26   _____

27          [1] The Court takes judicial notice that J. Baltazar is no longer warden of USP–Tucson.  As
     such, the Court will substitute the new Complex Warden at the Federal Correctional Complex in
28   Tucson, Arizona, which includes USP–Tucson.  Accordingly, Warden C. Howard is substituted
     as the sole Respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

Mitchell Decl. (Exh. "A"), Inmate Data (Attach. "1") at 6–7.[2]   Petitioner's projected release date is October 20, 2047.   *See* Fed. BOP Inmate Locater, https://www.bop.gov/inmateloc/ (last visited March 29, 2021).   On February 2, 2018, Petitioner filed a Petitioner Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in Federal Custody.   *See* Petition (Doc. 1).   Petitioner challenges a disciplinary conviction that resulted in his loss of good time credits.   *See id.*   Petitioner alleges that insufficient evidence, a violation of his religious freedom rights, and due process violations during the disciplinary process resulted in the disallowance of twenty-seven (27) days of good time credits.   *See id.*   Petitioner requests this Court order Respondent to expunge the disciplinary violations and return the twenty-seven (27) days of good time credits.   *See id.*

## II.   FACTUAL BACKGROUND

This matter arises from a July 10, 2010 altercation between two other prisoners. The Incident Report and disciplinary proceedings involving Petitioner have been the subject prior habeas petitions and rehearing.   *See* Petition (Doc. 1) at 10–16; Response (Doc. 12) at 2.   Petitioner instituted the current action on February 2, 2018.   *See* Petition (Doc. 1).

### A.   *July 10, 2010 Incident*

On July 10, 2010, Petitioner was housed at the United States Penitentiary in Lee County, Virginia ("USP–Lee").   Petition (Doc. 1) at 10.   That afternoon, while watching a softball game on the prison yard, Jordan observed two other prisoners, Paul Weakley and Kenneth Mills on the ground, fighting.   *Id.* at 10; *see also Jordan v. Zych*, No. 7:10-cv-00491, 2011 WL 2447937, at * 1 (W.D. Va. June 15, 2011).   Jordan alleges that he observed Mills was unarmed, but Weakley had a weapon, described as a "homemade shank."   Petition (Doc. 1) at 10.   "Jordan approached the two prisoners and placed his

---

[2] Page citations refer to the Case Management/Electronic Case Files ("CM/ECF") page number for ease of reference.

foot on the knife-wielding arm and/or wrist of Weakley[.]"  *Id.*  Jordan further alleges that upon his intervention, "Mills and Weakley disengaged and Jordan immediately retreated."  *Id.*  Jordan "remained on the prison yard for two hours following the incident after which time he was approached by Special Investigative Services (SIS) Technician B. Calton[.]"  *Id.*  SIS Tech. Calton "escorted [Jordan] from the prison yard and placed [him] in Administrative Detention of the Special Housing Unit."  *Id.*  Surveillance cameras recorded the entire incident.  Petition (Doc. 1) at 10.

### B.   *Incident Report Number 2039042—Initial Hearing*

On July 11, 2010 at approximately 6:30 a.m., SIS Tech. Calton prepared an incident report regarding Jordan's participation in the altercation.  Response (Doc. 12), Mitchell Decl. (Exh. "A"), Incident Report No. 2039042 (Attach. "2") (Doc. 12-4) at 56.[3] SIS Tech. Calton reported that he "reviewed Vicon video from the recreation yard, which was a view of the back wall near the softball bleachers."  *Id.*  SIS Tech. Calton "observed Inmate Jordan . . . walk over to the location of were [sic] Inmates Weakley . . . and Mills . . . were having an altercation[.]"  *Id.*  SIS Tech. Calton further observed Jordan "take his right foot and place it on Inmate Weakley['s] . . . arm and upper area, leaving Inmate Weakley . . . not able to defend his self at that time of the altercation."  *Id.*  SIS Tech. Calton charged Petitioner with the prohibited act of Assaulting Any Person in violation of Code 101.  Response (Doc. 12), Exh. "A," Attach. "2" at 56.

Later the same day Lieutenant R. Payne delivered the incident report to Petitioner. *Id.* at 56–57.  Lt. Payne suspended the Incident Report "pending SIS/FBI referral[.]"  *Id.* at 57.  On July 14, 2010, the "Incident [R]eport was released for administrative processing" by SIS Tech. P. Mines.  *Id.* at 57.  The release occurred "when the United States Attorney's Office decided it would not pursue a possible criminal prosecution

---

[3] Attachment "2" is described as "a true and correct copy of Discipline Hearing Officer ("DHO") Report #2039042, and related documents, maintained in inmate Jackson's [sic] Central File."  Response (Doc. 12), Mitchell Decl. (Exh. "A") at ¶ 4.  There appear to be multiple copies of SIS Tech. Calton's original Incident Report contained within Attachment "2".  The one referenced here is marked "Exhibit 1" and described as "Incident Report # 2039042 (First Issuance)."

against Jordan." *Jordan v. Zych*, No. 7:10-cv-00491, 2011 WL 2447937, at *1 (W.D. Va. June 15, 2011). Petitioner received another copy of the incident report that same day. Response (Doc. 12), Mitchell Decl. (Exh. "A"), Incident Report No. 2039042 (Attach. "2") (Doc. 12-4) at 57. Lieutenant M. Schreiber also investigated the incident and advised Petitioner of his rights. *Id.* Lt. Schreiber noted that Petitioner displayed a fair attitude, and understood his rights. *Id.* Petitioner did not request any witnesses. *Id*. Lt. Schreiber forwarded the Incident Report to the Unit Disciplinary Committee ("UDC") for further disposition. *Id.*

On July 16, 2010, the UDC conducted its hearing. Response (Doc. 12), Mitchell Decl. (Exh. "A"), Incident Report No. 2039042 (Attach. "2") (Doc. 12-4) at 56. At the hearing, Petitioner stated that "he understood his right to remain silent[,]" and that he "did not assault anyone[.]" *Id.* The UDC referred the matter to the DHO for a further hearing, and if Petitioner was found guilty, recommended a loss of forty-one (41) days good conduct time ("GCT") and 180 days loss of commissary privileges. *Id.* The UDC also provided Petitioner with a Notice of Discipline Hearing Before the DHO and his rights at that hearing. Response (Doc. 12), Mitchell Decl. (Exh. "A"), Not. of Discipline Hr'g Before the (DHO) (Attach. "2") (Doc. 12-4) at 45–46 & DHO Rpt. (Attach "2") (Doc. 12-4) at 59. Petitioner requested Mr. Cole as his staff representative, and Inmates Mills, Weakley, and Vasiliades as witnesses, for his DHO hearing. *Id.*, Exh. "A," Attach. "2" at 45.

On August 18, 2010, Petitioner had a DHO hearing before DHO T. Trees. *See* Response (Doc. 12), Mitchell Decl. (Exh. "A"), DHO Rpt. (Attach. "2") (Doc. 12-4) at 59–64. DHO Trees noted that on July 16, 2010, Counselor J. Lalonde had advised Petitioner of his rights before the DHO. *Id*., Exh. "A," Attach. "2" at 59. At the DHO hearing, Petitioner indicated that he understood his rights, request Mr. L. Cole as his staff representative at the DHO hearing, and waived his previous request for witnesses. *Id.*, Exh. "A," Attach. "2" at 61. Petitioner reportedly stated that "[e]verything [in section 11 of the incident report] is true[;] I walked up to Weakley because he had a knife[;] I put

my foot on his arm wanting Mills to break away[;] [and] I wasn't trying to assault anyone." *Id.*

DHO Trees relied on the written report of SIS Tech. B. Calton, who reviewed the recorded VICON surveillance, the memorandum of Lt. E. Allen, "who reported this incident ended without staff being aware of its occurrence[,]" and Petitioner's statements before the DHO acknowledging that he put his foot on Weakley's arm, in finding Petitioner "violated code 224, Assaulting Without Serious Injury, of the Inmate Discipline Policy." *Id.*, Exh. "A," Attach. "2" at 62. DHO Trees noted that Petitioner "freely chose to intervene into what was clearly an armed confrontation, during which serious injuries had been inflicted." Response (Doc. 12), Mitchell Decl. (Exh. "A"), DHO Rpt. (Attach. "2") (Doc. 12-4) at 62. DHO Trees further noted that Petitioner "clearly demonstrated [that he] knew [his] actions and behavior to be assaultive, by both leaving the area to avoid identification and by failing to notify staff of [his] involvement." *Id.* Accordingly, DHO Trees imposed sanctions totaling twenty-seven (27) days disallowance of GCT, fifteen (15) days disciplinary segregation (suspended for 90 days), and loss of visiting privileges for 120 days. *Id.*, Exh. "A," Attach. "2" at 63. On August 18, 2010, DHO Trees signed the DHO report.

### C. First Habeas Proceeding

Petitioner exhausted his administrative remedies and challenged the disciplinary conviction via a petition for writ of habeas corpus, alleging twenty (20) claims of due process violations and one claim under the Religious Freedom Restoration Act ("RFRA"). *Jordan v. Zych*, No. 7:10-cv-00491, 2011 WL 2447937, at *3 (W.D. Va. June 15, 2011). The court found that "[t]he record indicate[d] that the prison officials provided Jordan with all of the process he was due under the Fifth Amendment." *Id.* The court also found that "Jordan's claims relating to the sufficiency of the evidence relied upon to convict him of the minor assault charge must also fail." *Id.* at *4. Additionally, the court dismissed Petitioner's RFRA claim. *Id.* at *6. On June 29, 2011, the court granted Petitioner's motion for reconsideration and vacated it June 15, 2011 opinion,

because "unbeknownst to the court, the Bureau of Prisons vacated the Disciplinary Hearing Officer's original report, the subject of Jordan's petition, and entered a revised report on May 4, 2011, which Jordan did not receive until May 23, 2011." Response (Doc. 12), *Jordan v. Zych*, No. 7:10-cv-00491, Order (Doc. 33) (W.D. Va. June 29, 2011) (Exh. "B") (Doc. 12-5). "Because the court based its June 15 opinion on the now-vacated report, and Jordan ha[d] not exhausted his administrative remedies relating to the revised report," the court vacated its opinion and dismissed Jordan's petition without prejudice. *Id.*

### D. Second Habeas Proceeding

Petitioner exhausted his administrative remedies as to the Amended DHO Report, and filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the Middle District of Pennsylvania. Petition (Doc. 1) at 13; *see also* Response (Doc. 12), *Jordan v. Bledsoe*, No. 1:11-CV-1836, Order (M.D. Pa. Sept. 11, 2012) (Exh. "C") (Doc. 12-6). The court ordered respondents to file a supplemental answer and gave Petitioner an opportunity to reply. Response (Doc. 12), Exh. "C" (Doc. 12-6) at 3. During the pendency of Jordan's petition, he was transferred to the United States Penitentiary in Big Sandy, Kentucky. Response (Doc. 12), Mot. to Voluntarily Dismiss Without Prejudice, *Jordan v. Bledsoe*, No. 1:11-cv-01836 WWC (M.D. Pa. May 1, 2013) (Exh. "D") (Doc. 12-7) at 1. Petitioner noted that the "since his arrival at his new institution in Kentucky, the Bureau of Prisons[] ha[d] held a rehearing on the charge of assault that underlies [the then pending] habeas action[,] . . . and Petitioner [wa]s in the process of exhausting his administrative remedies with respect to the rehearing[.]" *Id.*, Exh. "D" at 1–2. On May 15, 2013, the court granted Petitioner's motion and dismissed the petition without prejudice. Response (Doc. 12), *Jordan v. Bledsoe*, No. 1:CV-11-1836, Order (M.D. Pa. May 15, 2013) (Exh. "E") (Doc. 12-8).

### E. Third Habeas Proceeding

Petitioner exhausted his administrative remedies as to the rehearing, and sought relief via a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petition

- 6 -

(Doc. 1) at 13; *see also* Pet. for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 by a Person in Fed. Custody, *Jordan v. Matevousian*, No. 1:15-CV-01895-LJO-SKO HC (E.D. Cal. Dec. 21, 2015), ECF No. 1.  The court dismissed Petitioner's habeas as moot, because in 2016 the Bureau of Prisons again held a rehearing of the charge against Petitioner, and "[i]n the ensuing determination, the DHO (1) addressed Petitioner's claims concerning his ability to present witnesses on his behalf and (2) more fully articulated the reasoning by which Petitioner's admitted action in intervening in Mills' and Weakley's fight constituted assault." *Jordan v. Matevousian* No. 1:15-cv-01895-LJO-SKO HC, Findings and Recommendation that Court Dismiss Pet. as Moot (E.D. Cal. Oct. 11, 2016), ECF No. 30; *see also* Response (Doc. 12), *Jordan v. Matevousian* No. 1:15-cv-01895-LJO-SKO HC, Order Adopting Findings and Recommendations Recommending Dismissal of the Pet. for Writ of Habeas Corpus and Denial of a Cert. of Appealability (E.D. Cal. Jan. 17, 2017) (Exh. "F") (Doc. 12-9).

### F.     Incident Report Number 2039042—February 2016 Rehearing

On January 29, 2016, Lieutenant B. Pavey re-investigated the July 10, 2010 incident report charging Petitioner with assault.  Response (Doc. 12), Mitchell Decl. (Exh. "A"), Incident Report No. 2039042 (Attach. "2") (Doc. 12-4) at 9–10.  Lt. Pavey noted that "[b]ased on the information in section 11 of th[e] report, it [wa]s [his] opinion that the inmate [wa]s properly charged." *Id.*, Exh. "A," Attach. "2" at 10.  On the same date, Lt. Pavey delivered the Incident Report to Petitioner and advised him of his rights. *Id.*, Exh. "A," Attach. "2" at 9–10.  Lt. Pavey also noted that Petitioner had a fair attitude and did not make any statement. *Id.*, Exh. "A," Attach. "2" at 10.  Lt. Pavey referred the incident to the UDC for further disposition. *Id.*

On the same date, the UDC conducted its hearing.  Response (Doc. 12), Mitchell Decl. (Exh. "A"), Incident Report No. 2039042 (Attach. "2") (Doc. 12-4) at 9.  Petitioner stated that he "did not assault anyone." *Id.*  The UDC referred the matter to the DHO for further hearing, and if Petitioner was found guilty, recommended any and all appropriate sanctions. *Id.*  The UDC also provided Petitioner with a Notice of Discipline Hearing

Before the (DHO) and his rights at that hearing.  Response (Doc. 12), Exh. "A," Attach. "2" at 11–13.  Petitioner indicated that he wished to have R. Boudreau as his staff representative at his DHO hearing, as well as Inmate Weakley as a witness.  *Id.*, Exh. "A," Attach. "2" at 13.  Petitioner refused to sign the form BP-294 Notice of Discipline Hearing Before the (DHO), because Counselor J. Isho did not put Inmate Mills on Petitioner's witness list, as Inmate Mills was deceased.  *Id.*, Exh. "A," Counselor Isho Memo to DHO Liwag 1/29/2016 (Attach. "2") (Doc. 12-4) at 14; *see also* Response (Doc. 12), Exh. "A," Not. of Discipline Hr'g Before the (DHO) (Attach. "2") (Doc. 12-4) at 13.

On February 3, 2016, Petitioner had a DHO hearing before DHO C. Liwag, which was postponed so that Petitioner could add Inmate Vasiliades as an additional witness.  Response (Doc. 12), Mitchell Decl. (Exh. "A"), DHO Rpt. 2/10/2016 (Attach. "2") (Doc. 12-4) at 2 & Not. of Discipline Hr'g Before the (DHO) (Attach. "2") (Doc. 12-4) at 13.  On February 10, 2016, "the disciplinary rehearing reconvened and all parties were ready to proceed as the Staff Representative assisted in obtaining inmate VASILIADES' witness statement."  Response (Doc. 12), Mitchell Decl. (Exh. "A"), DHO Rpt. 2/10/2016 (Attach. "2") (Doc. 12-4) at 2 (emphasis in original).  At the hearing, "[t]he DHO confirmed with the inmate that he received a copy of his incident report, DID want to call inmate witnesses[], DID want a staff representative and had documentary evidence to submit."  *Id.* (emphasis in original).  Petitioner indicated that he understood those rights and was prepared to proceed.  *Id.*  Inmate Weakley appeared via telephone conference, as well as provided a signed written statement, and Inmate Vasiliades submitted a written statement answering questions Petitioner had posed.  *Id.*  Correctional Counselor R. Boudreau appeared as Petitioner's staff representative.  *Id.*

DHO Liwag reviewed SIS Tech. Calton's written report.  Response (Doc. 12), Mitchell Decl. (Exh. "A"), DHO Rpt. 2/10/2016 (Attach. "2") (Doc. 12-4) at 2.  The video of the altercation was presented as evidence at the rehearing.  *Id.*, Exh. "A," Attach. "2" at 3.  DHO Liwag described the video showing:

> [I]nmates WEAKLEY . . . and MILLS . . . having a physical altercation in a recreation yard.  As MILLS is on top of WEAKLEY, JORDAN walks over and places his foot on WEAKLEY'S left hand/left arm while MILLS is on top of WEAKLEY.  Inmate JORDAN leaves inmate WEAKLEY with one hand to defend himself against inmate MILLS.  Moments later, inmate MILLS and inmate WEAKLEY disengage in the physical altercation.

*Id.*  DHO Liwag reported that during the rehearing Petitioner stated, "I intervened to break up the incident.  I did put my foot on Weakley's hand to break it up.  I also have a written statement.  Thank you for giving me a fair shot.  I got all my evidence in."  *Id.* Petitioner's staff representative confirmed that "[t]he video did show he (JORDAN) did put his foot on his (WEAKLEY'S) arm/hand[.]"  *Id.* (emphasis in original).

DHO Liwag also reviewed the written documentary evidence submitted by Petitioner, including Petitioner's statement of facts, questions to inmate Vasiliades, and prior written statements from inmates Weakley and Vasiliades.  Response (Doc. 12), Mitchell Decl. (Exh. "A"), DHO Rpt. 2/18/2016 (Attach. "2") (Doc. 12-4) at 3.  "Inmate Jordan asserts that inmate MILLS who is deceased would testify that JORDAN'S touching of inmate Weakley was merely 'incidental' and 'not intentional.'"  *Id.* (internal quotations omitted) (emphasis in original).  Petitioner also asserted that "both his prior Staff Representatives (H. Chance and L. Cole) stated, "I reviewed the video and it is consistent with Jordan's statement."  *Id.*  DHO Liwag described Petitioner's prior statements as follows:

> During the 10-9-12 DHO rehearing you stated, "Everything is True.  I walked up to WEAKLEY because he had a knife.  I put my foot on his arm, wanting MILLS to break away.  I wasn't trying to assault anyone, I was just trying to breakup the fight."  Upon review during the 8-18-2010 DHO hearing you essentially said the same thing to T. Trees, DHO, USP Lee.  As such, the DHO deemed these statements to be consistent with your statements during the rehearing at USP Atwater which were, "I intervened to break up the incident.  I did put my foot on Weakley's hand to break it up."

Response (Doc. 12), Exh. "A," Attach. "2" at 3 (emphasis in original).  DHO Liwag also considered the written statement of Inmate Vasiliades, as well as his prior statement.  *Id.*

In both statements, Vasiliades noted that Petitioner had intervened to stop a fight between two other prisoners, and opined that Petitioner did not assault either prisoner.  *Id.*  DHO Liwag also reviewed Inmate Weakley's written statement, his answers to questions during the rehearing, as well as a November 8, 2010 written statement.  *Id.*  DHO Liwag described Inmate Weakley's statements and testimony as follows:

> In the written statement, WEAKLEY states, "I was attacked by an inmate with a knife, who was trying to murder me for no good reason.  A friend of mine, Mark Jordan, attempted to help me escape this attack by getting in between me and this attacker.  If it wasn't for Mr. Jordan's help, I may have been dead."  JORDAN also handed the DHO a list of proposed questions for WEAKLEY.  The DHO read these questions to WEAKLEY during the telephone conference.  In summarizing the witness questions for WEAKLEY, inmate WEAKLEY states that JORDAN'S touching of him was not "unwanted" and he was gracious for JORDAN'S interference. JORDAN also presented a written declaration from Inmate WEAKLEY dated 11/8/2010.  This declaration was presented in response to JORDAN'S Secure Management Unit (SMU) referral, which occurred after the incident.  In the declaration, Inmate WEAKLEY also states that he believes that JORDAN'S interference of the altercation between him and MILLS was not an assault.  WEAKLEY states that JORDAN only placed his foot on his arm, which prevented him from stabbing MILLS. . . . [I]n the 11/8/2010 statement, section (4) WEAKLEY states, "I did not know prisoners Mills or Jordan prior to the 7/10/2010 incident."  In the 1/26/16 statement Inmate WEAKLEY states, "A friend of mine Mark Jordan attempted to help me escape this attack by getting between me and the attacker."

Response (Doc. 12), Exh. "A," Attach. "2" at 3–4 (emphasis in original).

DHO Liwag considered the written and verbal statements of Inmate Jordan, the written and verbal statements of Inmate Weakley, Inmate Vasiliades's written statements, and prior Staff Representative statements, as well as the written reports, supporting memoranda, and the video of the incident.  Response (Doc. 12), Mitchell Decl. ("Exh. "A"), DHO Rpt. 2/18/2016 (Attach. "2") (Doc. 12-4) at 4.  DHO Liwag observed "essentially all parties state and agree that JORDAN stepped on Weakley's hand or arm[.]  *Id.*  DHO Liwag further observed that "ultimately, JORDAN'S stepping of [sic] Inmate WEAKLEY'S arm/hand is by definition an assault (unwanted touching of

another)." *Id.* (emphasis in original).  DHO Liwag disagreed with Petitioner's contention that his conduct was "incidental contact," stating, "[I]t is clear on the video that inmate JORDAN 'freely' goes over to inmate WEAKLEY and placed his foot on WEAKLEY's left hand/arm." *Id.* (emphasis in original).  DHO Liwag further opined that "[d]espite JORDAN'S intentions and WEAKLEY'S gratitude, the DHO believes JORDAN had no right to step in and physically break up an altercation between two inmates[,] . . . [and] this could have resulted in MILLS having an advantage against WEAKLEY and the incident could have resulted in more serious injuries or death for inmate WEAKLEY.  *Id.* (emphasis in original).

DHO Liwag deemed Inmate Weakley's testimony less credible, finding that his written statements conflicted.  Response (Doc. 12), Mitchell Decl. (Exh. "A"), DHO Rpt. 2/18/2016 Attach. "2" at 4.  DHO Liwag also "considered JORDAN'S stat[e]ments, inmate witnesses' and staffs['] exculpatory statements, but still deemed [Petitioner's] interference to be an assault on Inmate WEAKLEY." *Id.*  "Based on the greater weight of evidence (the officer's written report, the supporting memo, the video and the statements of the Inmate, the inmate witnesses statements & the staff representative review of the video)," DHO Liwag found that Petitioner committed the prohibited act of Assaulting Any Person (without serious injuries), in violation of Code 224.  *Id.*  DHO Liwag imposed the previously served sanctions totaling twenty-seven (27) days disallowance of GCT, fifteen (15) days disciplinary segregation (suspended for ninety (90) days with clear conduct), and 120 days loss of visiting privileges.  *Id.*  On February 18, 2016, DHO Liwag signed the DHO report and delivered it to Petitioner via institutional mail on the same date.  Response (Doc. 12), Exh. "A," Attach. "2" at 5.

### G.    The Instant Habeas

On February 2, 2018, Petitioner filed his Petition (Doc. 1) challenging the February 10, 2016 re-hearing.  Petitioner asserts six (6) grounds for relief, alleging his disciplinary conviction was obtained in violation of 1) "28 C.F.R. §541.8(f) as the DHO decision that Jordan committed an assault, that Jordan's touching of Weakley was

'unwanted,' is not supported by the greater weight of the evidence"; 2) "28 C.F.R. § 541.8(f) as the DHO refused to recieve [sic] into evidence and consider Jordan's proffered documentary evidence in the form of written statements of inmate witnesses prepared in 2010 and collected by his previous staff representative, Lance Cole"; 3) "his religious freedom rights protected by statute, 42 U.S.C. §§2000bb-cc, in that it substantially burdens Jordan's religious exercise, . . . while failing to further a compelling government interest by the least restrictive means"; 4) "his due process rights as the DHO decision that Jordan committed an assault, the unwanted touching of Weakley, is not supported by any evidence"; 5) "his due process rights to present witnesses and documentary evidence in that the DHO refused to recieve [sic] into evidence and consider Jordan's documentary evidence in the form of written statements collected from inmate witnesses in 2010 by Jordan's previous staff representative, Lance Cole"; and 6) "his due process rights to be heard at a meaningful time by virtue of the undue delay between the underlying incident on July 10, 2010 and the February 10, 2016 rehearing, prejudicing Jordan's ability to defend against the charge by depriving him of favorable evidence and witnesses, specifically, the testimony of witness Kenneth Mills, whose testimony was otherwise available were the hearing properly held in a reasonable manner and at a meaningful time."  Petition (Doc. 1) at 17–18.

## III.   ANALYSIS

### A.   *Jurisdiction—In General*

"Federal courts are always 'under an independent obligation to examine their own jurisdiction,' . . . and a federal court may not entertain an action over which it has no jurisdiction."  *Hernandez v. Campbell*, 204 F.3d 861, 865 (9th Cir. 2000) (quoting *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)).  "Habeas corpus proceedings are the proper mechanism for a prisoner to challenge the 'legality or duration' of confinement."  *Badea v. Cox*, 931 F.2d 573, 574 (9th Cir. 1991) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 484, 93 S. Ct. 1827, 1833, 36 L. Ed. 2d 439 (1973)).

1
2
3
4
5
6

"Generally, motions to contest the legality of a sentence must be filed under § 2255 in the sentencing court, while petitions that challenge the manner, location, or conditions of a sentence's execution must be brought pursuant to § 2241 in the custodial court." *Hernandez*, 204 F.3d at 864.  Therefore, before proceeding to any other issue a court must establish whether a habeas petition is filed pursuant to § 2241 or § 2255 to determine whether jurisdiction is proper. *Id.* at 865.

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

Here, Petitioner does not claim that the sentencing court imposed an illegal sentence; rather he seeks relief with respect to disciplinary proceedings while incarcerated at a federal facility.  As such, Petitioner is challenging the manner, location, or condition of the execution of his sentence.  *See e.g., Rogers v. United States*, 180 F.3d 349 (1st Cir. 1999) (Section 2241 petition is appropriate vehicle to challenge the correctness of a jail-time credit determination, once administrative remedies have been exhausted); *Nettles v. Grounds*, 830 F.3d 922, 927 (9th Cir. 2016) (en banc), ("[c]hallenges to the validity of any confinement or to the particulars affecting its duration are the province of habeas corpus[.]" (quoting *Muhammad v. Close*, 540 U.S. 749, 750, 124 S. Ct. 1303, 158 L.Ed.2d 32 (2004)); *Tucker v. Carlson*, 925 F.2d 330, 332 (9th Cir. 1991) (a prisoner's challenge to the "manner in which his sentence was executed . . . [is] maintainable only in a petition for habeas corpus filed pursuant to 28 U.S.C. § 2241").  Such a challenge must be brought pursuant to § 2241 in the custodial court.  At the time of filing the Petition, Petitioner was incarcerated at USP – Tucson in Arizona.  Accordingly, this Court has jurisdiction over this matter.  *Francis v. Rison*, 894 F.2d 353 (9th Cir. 1990).

23
24

### B.   *Exhaustion*

#### 1.  In General

25

The Ninth Circuit Court of Appeals has stated:

26
27
28

[28 U.S.C. § 2241] does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus. [Footnote omitted.] However, we require, as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under §

2241.

*Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 126 S. Ct. 2422, 165 L. Ed. 2d 323 (2006). "The requirement that federal prisoners exhaust administrative remedies before filing a habeas corpus petition was judicially created; it is not a statutory requirement." *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990), *overruled on other grounds by Reno v. Koray*, 515 U.S. 50, 54–55, 115 S. Ct. 2021, 2023–24, 132 L. Ed. 2d 46 (1995). "Nevertheless, '[p]rudential limits like jurisdictional limits and limits on venue, are ordinarily not optional.'" *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (alterations in original) (quoting *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 126 S. Ct. 2422, 165 L.Ed.2d 323 (2006)).

"Courts may require prudential exhaustion if '(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.'" *Id.* (quoting *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)). "When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011) (citations omitted). Exhaustion may be excused if pursuing an administrative remedy would be futile. *Fraley v. United States Bureau of Prisons*, 1 F.3d 924, 925 (9th Cir. 1993).

If a prisoner is unable to obtain an administrative remedy because of his failure to appeal in a timely manner, then the petitioner has procedurally defaulted his habeas corpus claim. *See Nigro v. Sullivan*, 40 F.3d 990, 997 (9th Cir. 1994) (citing *Francis, Francis v. Rison*, 894 F.2d 353, 354 (9th Cir. 1990); *Martinez v. Roberts*, 804 F.2d 570,

571 (9th Cir. 1986)).   If a claim is procedurally defaulted, the court may require the petitioner to demonstrate cause for the procedural default and actual prejudice from the alleged constitutional violation.   *See Francis*, 894 F.2d at 355 (suggesting that the cause and prejudice test is the appropriate test); *Murray v. Carrier*, 477 U.S. 478, 492, 106 S. Ct. 2639, 2647–48, 91 L. Ed. 2d 397 (1986) (cause and prejudice test applied to procedural defaults on appeal); *Hughes v. Idaho State Bd. of Corrections*, 800 F.2d 905, 906–08 (9th Cir. 1986) (cause and prejudice test applied to *pro se* litigants).

### 2.   BOP Administrative Procedures

The BOP has established an administrative remedy process permitting an inmate to seek review of an issue relating to "any aspect of his/her own confinement." 28 C.F.R. § 542.10(a).   Under that process, an inmate seeking to appeal a DHO decision shall submit the appeal "initially to the Regional Director for the region where the inmate is currently located." 28 C.F.R. § 542.14(d)(2).   "An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response." 28 C.F.R. § 542.15(a).   The deadlines contained within this process may be extended upon request by the inmate and a showing of a valid reason for delay.   28 C.F.R. § 542.15(a); 28 C.F.R. § 542.14(b).   An appeal is considered filed on the date it is logged in the Administrative Remedy Index as received.   28 C.F.R. § 542.18.   Once an appeal is filed, a Regional Director shall respond within 30 days; General Counsel shall respond within 40 calendar days.   *Id.*   "If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." *Id.*

### 3.   Exhaustion in the Instant Case

Here, Respondent did not comment regarding Petitioner's exhaustion of his administrative remedies and the record does not contain any information regarding Petitioner's administrative appeal of the February 10, 2016 disciplinary rehearing.   The Ninth Circuit Court of Appeals, however, has recognized that:

1
2
3
4
5

> [T]he requirement of exhaustion of remedies [is to] aid judicial review by
> allowing the appropriate development of a factual record in an expert
> forum; conserve the court's time because of the possibility that the relief
> applied for may be granted at the administrative level; and allow the
> administrative agency an opportunity to correct errors occurring in the
> course of administrative proceedings.

6
7
8
9
10

*Ruviwat v. Smith*, 701 F.2d 844, 845 (9th Cir. 1983). In this case, the factual record is adequately developed, and nothing in the record suggests that further administrative review would result in any changes. Accordingly, the Court finds the Petitioner's claims exhausted; however, even if the exhaustion is faulty, it shall be excused and the Court will reach the merits.

11

### C.   Due Process (Grounds Four through Six)

12
13
14
15
16
17

Petitioner asserts due process violations arising from the February 10, 2016 disciplinary rehearing, including 1) the DHO's decision that Petitioner "committed an assault, the unwanted touching of Weakley, is not supported by any evidence"; 2) the DHO's refusal to receive written inmate witness statements collected by Petitioner's previous staff representative, L. Cole; and 3) the undue delay between the underlying incident and the rehearing. Petition (Doc. 1) at 17–18.

18

### 1.  Legal Standard

19
20
21
22
23
24
25
26
27
28

"Due process in a prison disciplinary hearing is satisfied if the inmate receives written notice of the charges, and a statement of the evidence relied on by the prison officials and the reasons for disciplinary action." *Zimmerlee v. Keeny*, 831 F.2d 183, 186 (9th Cir. 1987) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563–66, 94 S. Ct. 2963, 2978–79, 41 L. Ed. 2d 935 (1974)). Additionally, "[t]he inmate has a limited right to call witnesses and to present documentary evidence when permitting him to do so would not unduly threaten institutional safety and goals." *Id.* (citations omitted). "Where an illiterate inmate is involved . . . [or] the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or if that

is forbidden to have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff." *Wolff*, 418 U.S. at 570, 94 S. Ct. at 2981. Finally, inmates have a right to an impartial decision maker. *Id.* at 571, 94 S. Ct. at 2982. "Prison disciplinary proceedings[, however,] are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings do[] not apply." *Wolff*, 418 U.S. at 556, 94 S. Ct. at 2975.

Once the minimal procedural requirements of *Wolff* are met, the district court must ask "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent, Mass. Corrections Inst. v. Hill*, 472 U.S. 445, 455–56, 105 S. Ct. 2768, 2774, 86 L. Ed. 2d 356 (1985). "[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits." *Id.* "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* Indeed, "[t]he standard is 'minimally stringent' only requiring 'any evidence in the record that could support the conclusion reached by the disciplinary board.'" *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987) (citing *Hill*, 472 U.S. at 454–56, 105 S. Ct. at 2774) (emphasis added in *Cato*).

## 2. Petitioner's Disciplinary Proceedings

### a. Ground Four: Finding that Petitioner committed an assault

Petitioner asserts that his due process rights were violated when the DHO found him guilty of assault. Petition (Doc. 1) at 7, 17. Petitioner argues that his conviction "is not supported by evidence that Jordan's touching of Weakley was 'unwanted.'" *Id.* at 7. The record before the Court indicates that Petitioner received written notice of the charges; had the opportunity to call witnesses and present documentary evidence; had a staff representative; received a statement of the evidence relied on by the prison officials; and the reasons for disciplinary actions. *See* Response (Doc. 12), Mitchell Decl. (Exh. "A"), DHO Rpt. 2/18/2016 (Attach. "2") (Doc. 12-4) at 1–5. DHO Liwag considered the written and verbal statements of Inmate Jordan, the written and verbal statements of

Inmate Weakley, Inmate Vasiliades's written statements, and prior Staff Representative statements, as well as the written reports, supporting memoranda, and the video of the incident.   Response (Doc. 12), Exh. "A," Attach. "2" at 4.   DHO Liwag observed "essentially all parties state and agree that JORDAN stepped on Weakley's hand or arm[.]   *Id.*   DHO Liwag further observed that "ultimately, JORDAN'S stepping of [sic] Inmate WEAKLEY'S arm/hand is by definition an assault (unwanted touching of another)." *Id.* (emphasis in original).   DHO Liwag disagreed with Petitioner's contention that his conduct was "incidental contact," stating, "[I]t is clear on the video that inmate JORDAN 'freely' goes over to inmate WEAKLEY and placed his foot on WEAKLEY's left hand/arm." *Id.* (emphasis in original).   DHO Liwag further opined that "[d]espite JORDAN'S intentions and WEAKLEY'S gratitude, the DHO believes JORDAN had no right to step in and physically break up an altercation between two inmates[,] . . . [and] this could have resulted in MILLS having an advantage against WEAKLEY and the incident could have resulted in more serious injuries or death for inmate WEAKLEY." *Id.* (emphasis in original).   DHO Liwag deemed Inmate Weakley's testimony less credible, finding that his written statements conflicted.   Response (Doc. 12), Mitchell Decl. (Exh. "A"), DHO Rpt. 2/18/2016 Attach. "2" at 4.   DHO Liwag also "considered JORDAN'S stat[e]ments, inmate witnesses' and staffs['] exculpatory statements, but still deemed [Petitioner's] interference to be an assault on Inmate WEAKLEY." *Id.*   "Based on the greater weight of evidence (the officer's written report, the supporting memo, the video and the statements of the Inmate, the inmate witnesses statements & the staff representative review of the video)," DHO Liwag found that Petitioner committed the prohibited act of Assaulting Any Person (without serious injuries), in violation of Code 224.[4]   *Id.*

---

[4] DHO Liwag defined Code 224 as "Assaulting any person (a charge at this level is used when less serious physical injury or contact has been attempted or accomplished by an inmate)[;] See Code 101. Assault is an attempt or threat to do violence to another and includes battery or the UNCONSENTED TOUCHING OF ANOTHER."  Response (Doc. 12), Mitchell Decl. (Exh. "A"), DHO Rpt. 2/18/2016 (Attach. "2") (Doc. 12-4) at 4 (emphasis in original).

The requirements of due process are satisfied if "there is some evidence from which the conclusion of the administrative tribunal could be deduced[.]"  *Hill*, 472 U.S. at 455, 105 S. Ct. at 2774 (quoting *United States ex rel. Vajtauer v. Commissioner of Immigration*, 273 U.S. 103, 106, 47 S. Ct. 302, 303, 71 L. Ed. 560 (1927)).  DHO Liwag considered and weighed the evidence in reaching his conclusion.  The Court finds that there is "some evidence" to support the DHO's finding, and Petitioner received the requisite due process.  *See Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987).

### b. Ground Five:  Right to present witnesses and documentary evidence

Petitioner asserts that his due process rights were violated, because the "DHO refused to recieve [sic] into evidence and consider Jordan's documentary evidence in the form of written statements collected from inmate witnesses in 2010 by Jordan's previous staff representative, Lance Cole[.]"  Petition (Doc. 1) at 17–18.  Petitioner alleges that:

> In the days preceding February 10, 2016, Jordan was summoned before the DHO, C. Liwag, for rehearing on the Incident Report.  At this time, DHO Liwag refused to accept into evidence and consider Jordan's proffered written inmate witness statements that had been prepared in July of 2010 and collected by his previous staff representative, Lance Cole, from other USP-Lee inmates who witnessed the incident.  These documents included the written statements of inmates Matt Campbell, Mike Hoffman, T. Arthur, Jeremiah McGuire, Justin Raions, Anthony Verdenski, Charles Dewabel, Mary Burt, Tom Martin, Daniel Magee, Robert George, Adam Verdekal, T. Robinson, Anthony Sabetta, Tommy Jackson, and Randy Souza.  Each of these inmate written witness statements averred that Jordan did not assault either Weakley or Mills during the incident and that any touching of either by Jordan was merely incidental to his obvious attempt to break up the altercation.  DHO Liwag stated that he could not consider these exculpatory statements because they were "dated" and not collected through Jordan's current staff representative, Counselor R. Boudreau, who had been assigned as Jordan's staff representative for the second rehearing.

Petition (Doc. 1) at 13–14.  Matt Campbell stated that he "personally witnessed the events of July 10th 2010" and opined that "Mark Jordan simply tried to break up a fight on the yard. No more. No less."  Response (Doc. 12), Mitchell Decl. (Exh. "A"), USP–

- 19 -

Lee Inmate Written Statements (Attach. "2") (Doc. 12-4) at 90.  Mike Hoffman also indicated that he "witnessed the events of July 10, 2010, and "[i]n [his] honest opinion, Mark only attempted to beak [sic] up an altercation between two other inmates, and otherwise had nothing to do with the incident . . . [and] did not assault either prisoner." *Id.*, Exh. "A," Attach. "2" at 91.  The remaining witnesses signed statements identical to that signed by Inmate Vasiliades.  *See Id.*, Exh. "A", Attach. "2" at 33, 92–99.  DHO Liwag accepted and considered Inmate Vasiliades's statements.  Response (Doc. 12), Mitchell Decl. (Exh. "A"), DHO Rpt. 2/18/2016 (Attach. "2") (Doc. 12-4) at 2–4.

"During the DHO rehearing, JORDAN was presented with the video of the incident and stated, 'I intervened to break up the incident[;] I did put my foot on Weakley's hand to break it up." *Id.*, Exh. "A," Attach. "2" at 3.  DHO Liwag noted that "[a]ssaulting another inmate by putting your foot on their hand/arm during a physical altercation between two inmates can escalate the incident between both inmates[;] [t]hough your intent may have been to quell the situation, you have no right to place your foot on another inmate." *Id.*, Exh. "A," Attach. "2" at 4.  Even if the other inmate statements had been admitted, they do not change Petitioner's own admission.  Furthermore, the statements do not provide any additional factual evidence, merely the opinions of the signors.  As the DHO found, "[d]espite JORDAN'S intentions and WEAKLEY'S gratitude, the DHO believes JORDAN had not right to step in and physically break up an altercation between two inmates[;] . . . [t]he DHO believes that JORDAN'S stepping on WEAKLEY's hand or arm rendered him with only one arm to defend himself against inmate MILLS who was on top of inmate WEAKLEY[,] . . . [and] this could have resulted in MILLS having an advantage against WEAKLEY and the incident could have resulted in more serious injuries or death for inmate WEAKLEY." *Id.*, Exh. "A," Attach. "2" at 4 (emphasis in original).  Accordingly, Petitioner's due process rights were not violated as a result of the exclusion of the signed witness statements.

### c. Ground Six: Delay of hearing

Petitioner asserts that his due process rights were violated "by virtue of the undue delay between the underlying incident on July 10, 2010 and the February 10, 2016 rehearing[.]" Petition (Doc. 1) at 18. Petitioner argues that the length of time between the incident and the rehearing "depriv[ed] him of favorable evidence and witnesses, specifically, the testimony of witness Kenneth Mills, whose testimony was otherwise available were the hearing properly held in a reasonable manner and at a meaningful time." *Id.* The record before the Court indicates that Petitioner received written notice of the charges; had the opportunity to call witnesses and present documentary evidence; had a staff representative; received a statement of the evidence relied on by the prison officials; and the reasons for disciplinary actions. *See* Response (Doc. 12), Mitchell Decl. (Exh. "A"), DHO Rpt. 2/18/2016 (Attach. "2") (Doc. 12-4) at 1–5. As such, Petitioner received all of the procedural protections that he was due. *See Wolff v. McDonnell*, 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974).

Even if Petitioner had a right to a disciplinary hearing at a certain time, he has failed to demonstrate how Inmate Mills's testimony would have changed the DHO's findings. DHO Liwag acknowledged that Inmate Mills "would testify that JORDAN's touching of inmate Weakley was merely 'incidental' and 'not intentional.'" Response (Doc. 12), Mitchell Decl. (Exh. "A"), DHO Rpt. 2/18/2016 (Attach. "2") (Doc. 12-4) at 3. Petitioner has not presented any evidence show how this testimony would have altered the DHO's findings based upon Petitioner's own statements and the video. *See* Section III.C.2.b., *supra.* As such, the Court finds that Petitioner's due process rights were not violated.

### D. Sufficiency of Evidence (Grounds One and Two)

Petitioner asserts his disciplinary conviction was obtained in violation of 28 C.F.R. § 541.8(f) because 1) the DHO's finding that Jordan committed an assault was "not supported by the greater weight of the evidence"; and 2) "the DHO refused to recieve [sic] into evidence and consider Jordan's proffered documentary evidence in the form of

written statements of inmate witnesses prepared in 2010 and collected by his previous staff representative, Lance Cole[.]"  Petition (Doc. 1) at 17.

### 1.  Ground One: Weight of evidence

Petitioner asserts that the DHO's decision that Jordan committed an assault was not supported by the greater weight of the evidence in contravention of Section 541.8(f), Title 28, Chapter V, Code of Federal Regulations.  Petition (Doc. 1) at 17.  Section 541.8(f) provides in relevant part:

> You are entitled to make a statement and present documentary evidence to the DHO on your own behalf.  The DHO will consider all evidence presented during the hearing.  The DHO's decision will be based on at least some facts and, if there is conflicting evidence, on the greater weight of the evidence.

28 C.F.R. § 541.8(f).  As discussed in Section III.C.2.a., *supra*, DHO Liwag considered all of the evidence presented at the hearing, weighed the evidence, and made findings. Additionally, Petitioner's focus on whether or not the contact was "unwanted" is without merit.  Prohibited Act Code 224 provides "Assaulting any person (a charge at this level is used when less serious physical injury or contact has been attempted or accomplished by an inmate)."  28 C.F.R. § 541.3, tbl. 1.  As DHO Liwag found, "[d]espite JORDAN'S intentions and WEAKLEY'S gratitude, the DHO believes JORDAN had no right to step in and physically break up an altercation between two inmates[,] . . . [and] this could have resulted in MILLS having an advantage against WEAKLEY and the incident could have resulted in more serious injuries or death for inmate WEAKLEY."  Response (Doc. 12), Mitchell Decl. (Exh. "A"), DHO Rpt. 2/18/2016 (Attach. "2") (Doc. 12-4) at 4 (emphasis in original).  Given all the evidence presented, the Court finds a greater weight of the evidence supports the DHO's determination in this case.

### 2.  Ground Two:  Additional Witness Statements

Petitioner asserts that his disciplinary convictions violated his rights pursuant to 28 C.F.R. § 541.8(f) because "the DHO's refused to recieve [sic] into evidence and consider Jordan's proffered documentary evidence in the form of written statements of inmate

witnesses prepared in 2010 and collected by his previous staff representative, Lance Cole[.]" Petition (Doc. 1) at 17.  Section 541.8(f)(3) provides in relevant part:

> You or your staff representative may request witnesses appear at the hearing to testify on your behalf.  Your requested witnesses may not appear if, in the DHO's discretion, they are not reasonably available, their presence at the hearing would jeopardize institution security, or they would present repetitive evidence.

28 C.F.R. § 541.8(f)(3).  As discussed in Section III.C.2.b., *supra*, the majority of the additional statements Petitioner sought to present were identical to that signed by inmate Vasiliades which was accepted and considered by the DHO.  Response (Doc. 12), Mitchell Decl. (Exh. "A"), DHO Rpt. 2/18/2016 (Attach. "2") (Doc. 12-4) at 33, 92–99. The two statements that were not identical, did not provide any additional information. *See id.*, Exh. "A," Attach. "2" at 90–91.  The DHO properly exercised his discretion in excluding the repetitive evidence.

### E.    *Religious Freedom (Ground Three)*

Petitioner describes himself as "a practitioner of Judaism, and sincerely believes in exercise thereof that he is religiously obliged to intervene to prevent the murder and/or unjustified assault of a fellow human being."  Petition (Doc. 1) at 11.  As such, Petitioner characterizes his intervention in the Mills/Weakley altercation to be a religious exercise. *Id.*  Petitioner asserts that his "disciplinary conviction was obtained in violation of his religious freedom rights protected by statute, 42 U.S.C. §§ 2000bb-cc, in that it substantially burdens Jordan's religious exercise . . . while failing to further a compelling government interest by the least restrictive means."  Petition (Doc. 1) at 17.

"Congress enacted the [Religious Freedom Restoration Act of 1993 ("RFRA")] in 1993 in order to provide very broad protection for religious liberty."  *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 693, 134 S. Ct. 2751, 2760, 189 L. Ed. 2d 675 (2014). RFRA provides that the "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability[.]"  42 U.S.C. § 2000bb-1(a).  "Enacted after the Supreme Court held [RFRA] unconstitutional[,] . . . as

- 23 -

applied to the states, in *City of Boerne v. Flores,* 521 U.S. 507, 117 S. Ct. 2157, 138 L. Ed. 2d 624 (1997), [the Religious Land Use and Institutionalized Person Act ("RLUIPA")] essentially reinstitutes the demanding RFRA standard of review for intrusions on religious liberty in the limited contexts of prisoners and federal land. *Walker v. Beard*, 789 F.3d 1125, 1134 (9th Cir. 2015).  RLUIPA provides in relevant part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–
>
> > (1) is in furtherance of a compelling governmental interest; and
> >
> > (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C.A. § 2000cc-1.  RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."  42 U.S.C. § 2000cc-5(7)(A).  "To constitute a substantial burden, a limitation of religious practice must impose a significantly great restriction or onus upon such exercise."  *Walker*, 789 F.3d at 1135 (quotations and citations omitted).

Assuming, without deciding, that the BOP regulations substantially burden Petitioner's exercise of his religious beliefs, prison security is a compelling governmental interest.  *Warsoldier v. Woodford*, 418 F.3d 989, 998 (9th Cir. 2005).  Furthermore, BOP's "rules preventing an inmate from joining in an ongoing melee, even if the inmate does so with the intention of stopping the fight, are the least restrictive means of accomplishing this interest."  *Jordan v. Zych*, No. 7:10-cv-00491, 2011 WL 2447937, at *6 (W.D. Va. June 15, 2011).  The Court finds Petitioner's RFRA claim without merit.

## IV.    CONCLUSION

Based on the foregoing, the Court finds that the due process requirements as

delineated by *Wolff* were met in this case.  The Court further finds that the DHO findings were supported by "some evidence" as required by *Hill*.  Additionally, the Court finds Petitioner's evidentiary objections are without merit and his religious freedom was not violated.  Therefore, the Petitioner's Petition (Doc. 1) shall be denied.  Accordingly, IT IS HEREBY ORDERED that:

(1)    C. Howard, Warden, is SUBSTITUTED as the sole Respondent, replacing B. Baltazar pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and Rule 43(c)(2) of the Federal Rules of Appellate Procedure; and

(2)    Petitioner's Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in Federal Custody (Doc. 1) is DENIED;

(3)    All pending motions are DENIED AS MOOT; and

(4)    The Clerk of the Court shall enter judgment and close its file in this matter.

Dated this 31st day of March, 2021.

Honorable Bruce G. Macdonald
United States Magistrate Judge